**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3494-21

LISA GAPPA,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
TEACHERS' PENSION
AND ANNUITY FUND,

     Respondent-Respondent.

_____

Submitted January 9, 2024 – Decided January 30, 2024

Before Judges Enright and Paganelli.

On appeal from the Board of Trustees of the Teachers' Pension and Annuity Fund, Department of the Treasury.

Bergman & Barrett, attorneys for appellant (Michael T. Barrett, of counsel and on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent (Sara M. Gregory, Assistant Attorney General, of counsel; Payal Y. Ved, Deputy Attorney General, on the brief).

PER CURIAM

Lisa Gappa appeals from a June 3, 2022 final agency decision of the Board of Trustees of the Teachers' Pension and Annuity Fund (Board) denying her application for accidental disability retirement benefits (ADRBs). We affirm.

I.

On May 1, 2017, Gappa was working as a teacher in an elementary school when she slipped and fell on a wet floor in the school cafeteria. She injured her lower back, the right side of her buttocks, and her right thigh, hip, and elbow. Although Gappa received conservative treatment for her injuries, including steroid medication, physical therapy, and epidural injections, her back pain continued. She did not return to full-time or modified work following the incident.

In 2017, Dr. Arik Mizrachi, a pain management and rehabilitation specialist, evaluated Gappa and concluded she had "a history of back pain" and experienced "lower pelvic pain and lower lumbar spine pain" after the May 1 incident. He also concluded she had a pre-existing spinal condition—spondylolisthesis—"at L5-S1."

In 2018, Dr. David J. Lamb, an orthopedic surgeon, evaluated Gappa and determined she had "a long history of preexisting mechanical low back pain"

2

and was under the care of a doctor since she was in a car accident in 2001.  Dr. Lamb also noted she was "managing her back and leg pain with chiropract[ic care], anti[-]inflammatories, and activity restriction."  Dr. Lamb concluded Gappa was a "candidate for surgery" because of her "preexisting lumbar [degenerative joint disease] and spondylolisthesis, [which was] acutely exacerbated by [the] slip and fall injury at work."

Dr. Nirav K. Shah, a neurosurgeon, examined Gappa in 2018 and determined she had "a history of low back pain [since] 2001" and "was in a car accident [and] . . . hurt her neck and lower back at the time."  Dr. Shah reported Gappa underwent treatment following the car accident "and did not have a complete resolution of her symptoms," but "at the time of her [2017] fall[,] she was . . . able to perform activities of daily living without restrictions."  Dr. Shah opined Gappa "ha[d an] aggravation injury to her pre-existing lumbar spondylolisthesis" and "would benefit surgically from anterior L5-S1 decompression and fusion to readjust disk height, then same day posterior decompression and fusion."

In June 2018, Drs. Elliot Sambol, Shah, and Seth Joseffer performed an "[a]nterior lumbar interbody fusion [at] L5-S1."  After the surgery, Dr. Sambol wrote a report describing the procedure, wherein he stated Gappa "suffered a

3

work-related accident . . . while working as a teacher" but "ha[d] a history of a motor vehicle accident many years ago which resulted in back pain and discomfort."

In May 2019, Gappa applied to the Board for ADRBs. On March 5, 2020, the Board denied her application, but granted her ordinary disability retirement benefits, finding she was permanently and totally disabled from her job as a teacher. The Board also concluded her "reported disability [wa]s the result of a pre-existing disease alone or a pre-existing disease that [wa]s aggravated or accelerated by [her] work effort." Gappa appealed from the Board's decision, and the Board transmitted the matter to the Office of Administrative Law for a contested hearing.

Before the Board denied Gappa's ADRB application, she submitted to an independent medical examination (IME) in December 2019 with Dr. Andrew M. Hutter, M.D., an orthopedic surgeon. Dr. Hutter reviewed records from Drs. Mizrachi, Sambol, and Shah and concluded Gappa was "totally and permanently disabled from the performance of her job as a teacher." He also reported that "[a]lthough [Gappa] denied having any major problem with her back in the past, there [wa]s documentation she had an MRI of her lumbar spine in 2015," "just two years before the [fall] in question." But because Dr. Hutter could not

determine if Gappa's disability was a direct result of the 2017 fall, he requested additional treatment records and copies of Gappa's prior MRIs so he could supplement his report.

In fact, Dr. Hutter prepared two addendums to his initial report after reviewing additional records regarding Gappa's medical history, including her MRIs from 2001 and 2015, and her chiropractic records from 2015. He noted her 2001 MRI showed "a pars defect at L5 bilaterally," and her other records demonstrated Gappa had "pre-existing lower back problems." Thus, Dr. Hutter opined "within a reasonable degree of medical probability" that "her disability was not the direct result of the May 1, 2017 accident," but rather, her fall "exacerbated an underlying condition at the same level, L5-S1."

In March 2021, Dr. David Weiss, an orthopedist, evaluated Gappa and issued a report based on his IME. Acknowledging he reviewed reports from Drs. Mizrachi, Lamb, and Shah, Dr. Weiss stated Gappa's "past medical history [wa]s remarkable for a motor vehicle accident in 2001 and a history of low back pain." Additionally, Dr. Weiss referenced Gappa's 2015 MRI, finding it "revealed bilateral L5 spondylolysis with new grade I anterolisthesis of L5 on S1," among other conditions. Further, he reported her 2017 MRI revealed "a spondylolisthesis seen L5 over S1 with unroofing of the disc." Although he

A-3494-21

noted Gappa had "a history of lumbar spine pathology," Dr. Weiss concluded her 2017 fall "did in fact cause [Gappa] to undergo a marked restriction in her overall activities of daily living, . . . consistent with a permanent disability." Thus, Dr. Weiss opined Gappa's permanent disability was "the direct result of the . . . work[-]related injury of May 1, 2017."

On October 7, 2021, an Administrative Law Judge conducted a virtual hearing. During the hearing, Gappa testified, and presented testimony from her husband and Dr. Weiss. On cross-examination, Gappa admitted that her chiropractic records showed she told her chiropractor as recently as October 2015 that her lower back pain was an "[eight] out of [ten]" on the pain scale.

During Dr. Weiss's testimony, he stated that after Gappa received chiropractic care, she "became asymptomatic, had no restrictions in activities of daily living[,] . . . and . . . was doing her job with no restrictions up until the day of the" 2017 fall. He explained:

> [I]f we look back at [20]11, we look back at the [20]15 MRI's, [Gappa] d[id] have a spondylolisthesis in the [20]15 MRI, but it[ was] a grade one, and . . . that's why in [20]15[, Gappa] did better with just receiving chiropractic care . . . . After the [20]17 [fall, there was] a change that [Gappa] develop[ed] spinal instability at the L5-S1 level on top of that herniated disc at L5-S1 . . . . [T]here [wa]s no recommendation of spine surgery . . . before the [20]17 occurrence.

A-3494-21

On cross-examination, Dr. Weiss admitted he did not review various medical reports before rendering his report, such as Gappa's 2001 MRI or Dr. Mizrachi's May 2017 report. He also acknowledged Gappa "had a history of lumbar spine pathology."

Dr. Hutter testified as the Board's expert and confirmed he reviewed numerous medical records pertaining to Gappa's medical history, including records preceding and post-dating her 2017 fall. He testified he specifically reviewed her 2001 and 2015 MRIs, her "pain management" records, and Dr. Shah's 2018 report. Dr. Hutter stated Dr. Shah noted Gappa had a "previous history of low back pain in 2001 from a car accident," and "had pain management, . . . and physical therapy without complete resolution of her symptoms." Dr. Hutter also testified that Dr. Shaw opined Gappa had an "aggravation injury to her pre-existing lumbar spondylolisthesis."

Additionally, Dr. Hutter stated Gappa's 2001 MRI revealed "a pars defect at L5 bilaterally, which is what was seen in the MRI[]s that were done after the accident as well," meaning "the defect in pars was there . . . almost [fourteen] years prior to the" 2017 fall. Therefore, Dr. Hutter opined with "a reasonable degree of medical certainty" that Gappa's 2017 injury "exacerbated an existing

7

problem" and her "disability was not the direct result of the May 1[], 2017 incident."

On April 5, 2022, the ALJ rendered an initial decision, recommending the Board grant Gappa ADRBs. The ALJ found Drs. Hutter and Weiss were "both well-qualified and testified professionally," but she "afford[ed] more weight to Dr. Weiss's opinion that Gappa would not [have been] disabled from her regular work responsibilities but for the slip and fall on May 1, 2017." The ALJ stated, "[u]ndeniably, Dr. Weiss did not review all records addressing treatment after the 2017 accident, including physical therapy notes, . . . post-surgical hospitalization records[,] and other evaluations," but "Dr. Hutter had less information than Dr. Weiss concerning Gappa's condition before the accident, which is most critical to this case."

The ALJ further concluded there was "[n]o evidence . . . Gappa was physically unable to work or engage in her usual activities, required epidurals, underwent prolonged physical therapy, or received recommendations for back surgery . . . before the 2017 accident." Additionally, the ALJ found "Dr. Hutter's conclusion d[id] not consider Gappa's baseline status before the fall, . . . and ability to perform her job and usual activities before the accident without restrictions," so "Dr. Weiss's opinion of causality [wa]s more credible." Citing

Gerba v. Board of Trustees, Public Employees' Retirement System, 83 N.J. 174, 186 (1980) and Petrucelli v. Board of Trustees, Public Employees' Retirement System, 211 N.J. Super. 280, 289 (App. Div. 1986), the ALJ also concluded "a preponderance of the credible evidence establishe[d] that the May 1, 2017[] accident was the 'essential significant or substantial contributing cause' to Gappa's ultimate disability."

On June 3, 2022, the Board denied Gappa's application for ADRBs. The Board "rejected the ALJ's causation finding," and her "legal conclusion that . . . Gappa [wa]s entitled to AD[RBs]." The Board found Gappa's "disability was the result of a pre-existing condition and degenerative changes," reasoning that her "condition was symptomatic for many years and demonstrably evident in the MRI[]s and other objective testing years before the incident she claim[ed] caused her disability." Additionally, the Board stated:

> [T]he ALJ failed to give proper weight to the medical records[,] which documented a long-standing history of pre-existing degenerative conditions, [and] included multiple references to [a] prior history of back pain and pre-existing degenerative changes in [Gappa's] lumbar spine. . . . Further, the ALJ failed to give proper weight to both Dr. Weiss['s] and Dr. Hutter's[] conclusions that the 2017 slip and fall incident intensified pre-existing degenerative conditions. Many of . . . Gappa's treating physicians commented on her "history of back pain" and "pre-existing" lumbar pathology[,] and her own physician's report that the incident exacerbated her pre-

existing conditions. Moreover, Dr. Weiss conceded . . . Gappa had a documented history of low back pain[] and decided that the 2017 [fall] was an aggravation and acceleration of prior injuries and pre-existing conditions.

The Board also rejects the substantial weight the ALJ gave to Dr. Weiss, given the fact that he made an opinion without reviewing a large portion of . . . Gappa's medical records yet admitted that the doctors noted she had a history of low back pain. The considerable amount of medical records that Dr. Weiss neglected to review all established a history of degenerative and symptomatic low back pain prior to the 2017 incident.

. . . Dr. Hutter's testimony deserves greater weight because he testified more reliably than Dr. Weiss. . . . Dr. Hutter's conclusions were made in harmony with . . . Gappa's medical history, her radiological testing, and the opinions of her treating physicians. Dr. Hutter also pointed out that the June 27, 2001 and October 30, 2015 MRIs of the lumbar spine show[ed] the presence and progression of pre-existing degenerative changes. . . . Therefore, Dr. Hutter's conclusion about direct result is more consistent with Gappa's treating physicians than Dr. Weiss'[s] conclusion.

Further, the Board found Dr. Weiss's conclusion that the 2017 fall caused Gappa's disability did "not fit with the facts in light of his diagnoses, which characterize[d] her . . . condition as an aggravation of pre-existing pathologies and degenerative changes." Therefore, the Board found Gappa's "pre-existing condition[,] in conjunction with the aggravation by the 2017 incident[,]

precludes a finding that the [2017 fall] directly resulted in her disability." Finally, in rejecting the ALJ's finding that "but for the accident in 2017, Gappa did not need spinal surgery, consistent with a lack of any prior surgical or invasive treatment recommendations," the Board concluded "the ALJ applied the incorrect legal standard to determine the issue of direct result."

## II.

On appeal, Gappa argues that she is entitled to ADRBs because, consistent with the standard enunciated in Gerba, she demonstrated her 2017 fall constituted "the essential significant or the substantial contributing cause of the resultant disability." Gerba, 83 N.J. at 187. We are not persuaded.

Our "review of administrative agency action is limited." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (citing In re Herrmann, 192 N.J. 19, 27 (2007)). The agency's decision should be upheld "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Ibid. (quoting Herrmann, 192 N.J. at 27-28). "A reviewing court 'may not substitute its own judgment for the agency's, even though the court might have reached a different result.'" In re Stallworth, 208 N.J. 182, 194 (2011) (quoting In re Carter, 191 N.J. 474, 483 (2007)). "The burden of demonstrating that the agency's action was arbitrary,

capricious[,] or unreasonable rests upon the [party] challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006).

It is not unusual in disputes over ADRBs for there to be conflicting medical opinions. Thus, in general, "[t]he credibility of the expert, and the weight to be accorded [the expert's] testimony, is assessed by the trier of fact." State v. Frost, 242 N.J. Super. 601, 615 (App. Div. 1990). It is also well settled "[t]he weight to which an expert opinion is entitled can rise no higher than the facts and reasoning upon which that opinion is predicated." Johnson v. Salem Corp., 97 N.J. 78, 91 (1984). "However, the choice of accepting or rejecting the testimony of witnesses rests with the administrative agency, and where such choice is reasonably made, it is conclusive on appeal." Renan Realty Corp. v. State, Dep't of Cmty. Affs., 182 N.J. Super. 415, 421 (App. Div. 1981).

We also accord deference to an agency's interpretation of the statutes it is charged with enforcing. Thompson v. Bd. of Trs., Tchrs.' Pension & Annuity Fund, 449 N.J. Super. 478, 483 (App. Div. 2017). "'Such deference has been specifically extended to state agencies that administer pension statutes,' because 'a state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of

expertise.'" Ibid. (quoting Piatt v. Bd. of Trs., Police & Firemen's Ret. Sys., 443 N.J. Super. 80, 99 (App. Div. 2015)). Still, we are not bound by the agency's legal opinions. Levine v. State Dep't of Transp., 338 N.J. Super. 28, 32 (App Div. 2001) (citation omitted).

Under the Teachers' Pension and Annuity Fund (TPAF) Law, N.J.S.A. 18A:66-1 to -93, a TPAF member is eligible for ADRBs if the member is "permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of [the member's] regular or assigned duties." N.J.S.A. 18A:66-39(c). An applicant for ADRBs benefits "must prove a disabling permanent . . . injury and, in so doing, must produce such expert evidence as is required to sustain that burden." Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29, 50-51 (2008).

In Richardson v. Board of Trustees, Police & Firemen's Retirement System, our Supreme Court held that a pension claimant seeking ADRBs must prove:

> (1) that [they are] permanently and totally disabled;
>
> (2) as a direct result of a traumatic event that is
>
> > a. identifiable as to time and place,
> >
> > b. undesigned and unexpected, and

> c. caused by a circumstance external to the member (<u>not the result of pre-existing disease that is aggravated or accelerated by the work</u>);
>
> (3) that the traumatic event occurred during and as a result of the member's regular or assigned duties;
>
> (4) that the disability was not the result of the member's willful negligence; an[d]
>
> (5) that the member is mentally or physically incapacitated from performing his usual or any other duty.

[192 N.J. 189, 212-13 (2007) (emphasis added).]

With respect to causation, the alleged traumatic event must be "the essential significant or the substantial cause of the resulting disability." <u>Gerba</u>, 83 N.J. at 187. But "[w]here there exists an underlying condition . . . which itself has not been directly caused, but is only aggravated or ignited[]by the trauma, then the resulting disability is, in statutory parlance, 'ordinary' rather than 'accidental' and gives rise to 'ordinary' pension benefits." <u>Id.</u> at 186.

Here, there was ample evidence in the record that: (1) Gappa had extensive pre-existing degenerative conditions in her lumbar spine including spondylolisthesis, which led to instability in her lumbar spine and eventually, surgery; (2) she complained about lower back pain dating back to 2001, when she was involved in a motor vehicle accident; and (3) she repeatedly sought

A-3494-21

treatment for her lower back pain well before her 2017 fall. Thus, we are satisfied the Board's criticisms of the ALJ's fact-finding − including the ALJ's assessment of the competing experts' opinions − were fair. And because we cannot conclude the Board acted arbitrarily, capriciously, or unreasonably in accepting Dr. Hutter's opinion over Dr. Weiss's opinion that Gappa's disability was not the direct result of her fall in May 2017, we discern no basis to disturb the Board's denial of Gappa's application for ADRBs.

To the extent we have not specifically addressed any other arguments raised by Gappa, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION